2022 IL App (1st) 192566-U

No. 1-19-2566

Order filed March 31, 2022

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 11612 |
| | ) | |
| EDWARD TRIPP JR., | ) | Honorable |
| | ) | Patrick Coughlin, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Pierce and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction is affirmed over his contention that the trial court abused its discretion in denying his motion to withdraw his guilty plea.

¶ 2    Defendant Edward Tripp Jr. pled guilty to one count of aggravated domestic battery (720 ILCS 5/12-3.3(a) (West 2016)) in exchange for a sentence of 66 months in prison. On appeal, he contends that the trial court abused its discretion when it refused to allow him to withdraw his guilty plea. For the reasons that follow, we affirm.

¶ 3 Defendant's conviction arose from the July 9, 2016, stabbing of his girlfriend, Teeorsha Payne. Following his arrest, defendant was charged by indictment with one count of attempted first degree murder, three counts of aggravated domestic battery, one count of aggravated battery, and one count of unlawful restraint.

¶ 4 On November 27, 2018, the case was called before Judge Allen Murphy. The State informed the trial court that it had reached a plea agreement with defendant, who was represented by retained counsel, John Fairman. Pursuant to the agreement, defendant would plead guilty to one count of aggravated domestic battery in exchange for a sentence of 66 months in prison. The court agreed that sentencing could take place the following day, as defendant had an appointment with a probate attorney that afternoon.

¶ 5 The court asked defendant if he understood the charge at issue, and defendant stated that he did. The court then confirmed with defendant that he wished to plead guilty to that charge, that he understood he was giving up his right to a bench or a jury trial, and that he had signed a jury waiver. Defendant indicated that he understood he was giving up his rights to see and hear the witnesses against him, to ask those witnesses questions, to present his own evidence, and to remain silent. He answered that he understood the potential maximum punishment for aggravated domestic battery; that the agreement he had reached with the State was for a sentence of 66 months in prison to be served at 85 percent, followed by four years of mandatory supervised release (MSR); and that his plea could trigger federal criminal penalties and could impact his ability to secure housing, employment, and various licenses. Defendant denied that anyone had forced, threatened, or promised him anything to induce him to plead guilty, and affirmed that he was pleading guilty freely and voluntarily.

¶ 6      The court requested the factual basis for defendant's plea. The parties stipulated that if the case were to proceed to trial, the evidence would show that on the day in question, defendant and Payne, who were in a dating relationship, argued in defendant's car while Payne's one-year-old child was in the back seat. Defendant struck Payne in the face with his hand and then stabbed her with a pocket knife "in the area of her left sternum," leaving a two-inch stab wound. Although Payne requested medical attention, defendant drove around for a period of time. He eventually parked the car and fell asleep behind the wheel. Payne took the knife and her child, fled on foot, and called the police. When Chicago Heights police arrived and placed defendant under arrest, they observed suspect blood on his clothing and in the car. Payne received eight stitches at the hospital.

¶ 7      The trial court found that defendant understood the nature of the charge against him and the possible penalties, that his plea was given freely and voluntarily, and that a factual basis existed for the plea. As such, the court accepted the plea and entered a guilty finding. The court continued the case for sentencing.

¶ 8      The next day, November 28, 2018, the court imposed a sentence of 66 months in prison and admonished defendant regarding his right to appeal. The State nol-prossed the remaining counts and published the terms of an order of protection. At the conclusion of the proceeding, Fairman stated, "Your Honor, one issue. I ask that the mitt to reflect Cermak. He just had arthroscopic surgery." The court obliged the request.

¶ 9      On December 24, 2018, defendant's mother went to the Office of the Cook County Public Defender and, on her son's behalf, asked for assistance in filing a motion to withdraw guilty plea. Acting as a "friend of the court," an assistant public defender drafted a motion and filed it on

December 26, 2018. The motion alleged that, at the time defendant pled guilty, he did not fully understand the ramifications of his plea, was under extreme duress, and did not knowingly and/or voluntarily waive his right to a trial. The motion further alleged that defendant and his mother had been unsuccessful in their attempts to reach Fairman.

¶ 10 The case was called before Judge Patrick Coughlin on May 29, 2019.[1] At that time, defendant told the court that he no longer wanted Fairman to represent him. The court appointed the Public Defender. On September 26, 2019, and on October 2, 2019, counsel filed two supplemental motions to withdraw the guilty plea. In the first, defendant asserted, among other things, that, at the time of his plea, he was "in excruciating pain due to a surgery procedure that he received prior to his plea." In the second motion, defendant added that he "asked his attorney on the day of the plea to get a continuance till [*sic*] the afternoon so that he could go home and retrieve his pain medication and the attorney disregarded his request." He further stated that "at the time of plea [he] was on prescribed drugs which impaired his ability to make a sound decision regarding his plea."

¶ 11 A hearing was held on defendant's motions on October 2, 2019, before Judge Coughlin. Defense counsel and the State jointly asked that defendant be sworn to the truth of the allegations in the supplemental motions for leave to withdraw his plea, and the trial court did so. With that, defense counsel rested on the motions.

---

[1] We take judicial notice that Judge Murphy passed away on February 13, 2019. See *People v. Rivera*, 221 Ill. 2d 481, 516 (2006) (taking judicial notice of a judge's retirement); *Hon. Allen F. Murphy*, Tributearchive.com, [https://%1fwww.tributearchive.com/obituaries/4170601/hon-allen-f-murphy/ chicago/illinois/donnellan-funeral-home] https://www.tributearchive.com/obituaries/4170601/ hon-allen-f-murphy/chicago/illinois/donnellan-funeral-home (last visited Mar. 8, 2022) [https://perma.cc/AQD3-ZSNN].

¶ 12 The State called Fairman as a witness. When asked whether, on November 27, 2018, defendant indicated "that on that day that he was having a hard time making a sound decision because he felt impaired based on drugs that he was taking," Fairman answered, "No, that wasn't part of the discussion." Fairman testified that he did not believe, based on defendant's mannerisms or his conversations with defendant, that defendant "appeared to be under the influence in any way" or "appeared to be suffering from excruciating pain." Defendant also did not complain of being in pain. Before defendant entered his plea, Fairman "went over everything multiple times with [defendant] and made him look me in the eye and tell me that he wanted to plead guilty three times prior to doing so."

¶ 13 Fairman testified that defendant did ask him to have the case continued to the next day. However, defendant made the request because he had "civil issues and regular affairs" to attend to, such as arranging for his mother to have power of attorney of all his affairs. As such, Fairman informed the State that defendant's plea was contingent on him being sentenced the next day. After confirming that the judge was amenable, the matter was continued for sentencing.

¶ 14 On cross-examination, Fairman acknowledged that defendant had indicated to him that he had had surgery. Because the surgery was not related to the case, it was not something that Fairman "dwelled on." He denied that defendant ever related that he was in constant pain from the surgery or that, on the date of the plea, he was "actually in pain from that surgery."

¶ 15 The trial court denied defendant's motion to withdraw his guilty plea. In the course of explaining its decision, the court stated, in relevant part, that "Even if the defendant was in pain when he pled guilty, there's nothing showing that because of that the defendant was unable to understand or make a knowing and intelligent waiver of his rights." The court found that

defendant's answers to the plea judge's inquiries were completely appropriate, and there was nothing to indicate any problems understanding the plea proceedings. Noting that a defendant is presumed fit, the court found that there was "nothing other than a general assertion by the defendant that he didn't understand because he was taking some unnamed pain medications for a surgery that occurred at some unknown time." Further, the court found that defendant's allegations were contradicted by Fairman's testimony that, on the day of the plea, nothing indicated to him that defendant was under the influence or was in pain.

¶ 16    On appeal, defendant contends that the trial court abused its discretion when it refused to allow him to withdraw his guilty plea.

¶ 17    A defendant has no absolute right to withdraw a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. In order to be allowed to do so, a defendant must show a manifest injustice under the facts involved. *Id.* A defendant should be allowed to withdraw his plea where it was not constitutionally entered. *People v. Manning*, 227 Ill. 2d 403, 412 (2008). Relevant here, a defendant may challenge the constitutionality of a guilty plea by alleging that it was not made voluntarily or with full knowledge of the consequences. *Id.* The decision whether to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the trial court and is reviewed for abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). An abuse of discretion occurs where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the court's view. *Id.*

¶ 18    Defendant contends that where nothing in the record contradicted or rebutted his sworn claim that prescription pain drugs impaired his ability to knowingly enter a guilty plea, the trial court abused its discretion in denying his motion to withdraw his plea. Defendant argues that

Fairman did not offer any testimony that amounted to a "contradiction" of his claim of impairment due to medication. Instead, he asserts that Fairman's testimony merely indicated that the topic of pain medication and surgery recovery did not arise in his conversations with defendant, consisted of "conclusory personal beliefs regarding [defendant's] mental acuity or chemical impairment at the time of the plea," and constituted a "plea of ignorance" rather than a rebuttal. Defendant also observes that during the plea hearing and sentencing, the trial court never asked him whether he was under the influence of any substance, even after Fairman told the court defendant "just had arthroscopic surgery." He maintains that where nothing contradicted his sworn claim regarding his mental impairment and pain, no basis existed for finding his claim to be incredible.

¶ 19    After reviewing the record, we find no abuse of discretion by the trial court. In reaching this conclusion, *People v. Bryant*, 2016 IL App (5th) 140334, in which this court addressed a similar claim, is instructive. In *Bryant*, the defendant appealed from the denial of his motion to withdraw his guilty plea, asserting that his ability to knowingly and voluntarily plead guilty had been impaired by his ingestion of Klonopin and the emotional distress he had been experiencing at the time. *Id.* ¶ 31. The defendant's trial attorney had testified at the hearing on the motion that he could not recall whether he had been advised that the defendant had been taking Klonopin, but that he had never seen the defendant exhibit any behavior that had caused him to ever question his competency or fitness to stand trial. *Id.* ¶ 23.

¶ 20    In determining that the circuit court did not abuse its discretion in denying the defendant leave to withdraw the guilty plea, this court applied the law applicable to fitness to stand trial. *Id.* ¶ 32. As the *Bryant* court observed, every defendant is presumed to be fit to plead or stand trial, and to be sentenced. *Id.* (citing *People v. Jamison*, 197 Ill. 2d 135, 152 (2001)). A defendant is

considered fit unless a physical or mental problem renders him unable to understand the nature and purpose of the proceedings against him or to aid in his defense. *Id.* When a defendant claims he was unfit, he bears the burden of proving that when he pled guilty or stood trial, facts in existence raised a real, substantial, and legitimate doubt as to his mental capacity to meaningfully participate in his defense and cooperate with counsel. *Id.* Such facts may include the defendant's demeanor and behavior, as well as any representations made by defense counsel regarding the defendant's competence. *Id.* A trial court's ruling on the issue of fitness will not be reversed unless it is against the manifest weight of the evidence. *Id.*

¶ 21    Here, the only evidence that defendant was in pain or taking pain medication at the time of the plea were his sworn statements that he was "in excruciating pain due to a surgery procedure that he received prior to his plea," that he "asked his attorney on the day of the plea to get a continuance till [*sic*] the afternoon so that he could go home and retrieve his pain medication," and that "at the time of plea [he] was on prescribed drugs which impaired his ability to make a sound decision regarding his plea."

¶ 22    These statements are contrary to Fairman's testimony that on the day of the plea, defendant asked him to have the case continued because he had "civil issues and regular affairs" to attend to. Fairman also testified that his discussions with defendant on the day of the plea did not include defendant telling him he felt impaired based on drugs he was taking, and that defendant did not complain of being in pain from his recent surgery. In addition, based on his observations of defendant's mannerisms and his conversations with defendant, Fairman did not believe defendant appeared to be under the influence of any substance or suffering from excruciating pain on the day of his plea.

¶ 23    Moreover, although the court did not specifically ask defendant if he was under the influence of any substance, defendant's answers to the trial court's other questions at the time of the plea were appropriate. The trial court admonished defendant concerning his rights and defendant repeatedly responded that he understood and was freely pleading guilty.

¶ 24    At a hearing on a motion to withdraw a guilty plea, the trial court is responsible for assessing the credibility of witnesses. *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 43. Here, the trial court credited Fairman's testimony that nothing indicated to him defendant was under the influence of any substance or was in pain at the time of the plea over defendant's "general assertion *** that he didn't understand because he was taking some unnamed pain medications for a surgery that occurred at some unknown time." We find nothing in the record that allows us to second-guess the trial court's determination as to the credibility and weight of Fairman's testimony. *Id.* Without more than defendant's bare allegation that pain and drugs prescribed for that pain impaired his ability to knowingly enter a guilty plea, we find his contention lacks merit. See *People v. Moore*, 214 Ill. App. 3d 938, 941 (1991) (affirming denial of motion to withdraw guilty plea where the only evidence of the defendant's alleged intoxication at the time of the plea was his own testimony to that effect). The trial court's conclusion that defendant's plea was knowing and voluntary was not against the manifest weight of the evidence. As such, the court did not abuse its discretion in denying defendant's motion to withdraw his plea.

¶ 25    As a final matter, we are mindful of defendant's argument that where different judges presided over the plea hearing and the hearing on the motion to withdraw the guilty plea, the second judge could not rely on any personal recollection or observation of defendant's demeanor at the

plea hearing to justify discrediting his sworn attestation that prescription drug use impaired his ability to knowingly and voluntarily plead guilty.

¶ 26    As noted above, the original trial court judge in this case passed away prior to the hearing on the motion to withdraw the guilty plea. When a trial judge dies, it becomes the duty of another judge presiding in the same court to decide subsequent motions. See *People v. Hampton*, 223 Ill. App. 3d 1088, 1096 (1991). While the new judge may not have heard or seen witnesses testify, he or she is nevertheless qualified to review the record of proceedings and is capable of considering the parties' arguments and the prior judge's rulings. *Id.* Here, nothing indicates that the second judge did not adequately review the prior proceedings or understand the case. As such, we find no reason to reverse.

¶ 27    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 28    Affirmed.